46 F.3d 1128
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Jerome HICKS, Defendant-Appellant.
 No. 92-5429.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 26, 1994.
Decided Jan. 20, 1995.
 
 Antoini M. Jones, MUNDY, HOLT & MANCE, Washington, D.C., for Appellant. Lynne A. Battaglia, United States Attorney, Maury S. Epner, Assistant United States Attorney, Baltimore, MD, for Appellee.
 OPINION
 Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.
 PER CURIAM:
 
 
 1
 James Jerome Hicks entered a guilty plea to one count of sale of unauthorized satellite decryption devices, 47 U.S.C.A. Sec. 605(e)(4) (West 1991), and one count of infringement of copyright, 17 U.S.C.A. Sec. 506(a) (West Supp.1994), 18 U.S.C.A. Sec. 2319 (West Supp.1994). He was sentenced to three years probation, fined $40,000, and ordered to make restitution in the amount of $20,000 to the Satellite Broadcasting and Communications Association (SBCA). Hicks appeals his sentence, contesting the amount of loss used to calculate his guideline range. He also claims that his fine is excessive and that the amount of restitution is excessive and does not represent the victims' loss. We affirm.
 
 
 2
 Between 1987 and 1991, Hicks illegally modified approximately 100 descrambling devices known as VideoCipher II (the "boards"). Hicks charged between $200 and $250 for each modification, which allowed satellite dish owners to receive up to fifteen channels for which they paid no additional monthly service charge. Hicks usually modified boards brought to him by dealers, who then sold the boards to their customers. He stipulated that the retail value of each modified board was $500-$650, but reserved the right to argue that his sentence should be based on some figure other than the total retail value.
 
 
 3
 Under the applicable guideline section, U.S.S.G. Sec. 2B5.3 (Criminal Infringement of Copyright),* the base offense level of six is enhanced by reference to the fraud guideline, U.S.S.G. Sec. 2F1.1, if the retail value of the infringing items exceeds $2000. The probation officer recommended an enhancement of five levels ($40,000-$70,000). At sentencing, defense counsel argued that the "retail value of the infringing items" was the amount Hicks received for making the modification. However, the district court determined that the retail value of the infringing items was $500-$650, the price a customer would pay for a modified board. We find that the court's determination was not clearly erroneous. The commentary to guideline section 2B5.3 distinguishes between the defendant's gain and the value of the infringing items, which will generally be more. See United States v. Larracuente, 952 F.2d 672, 674-75 (2d Cir.1992) (where bootleg tapes of sufficient quality to be sold as genuine, retail value of infringing items was normal retail price, not amount realized by defendant).
 
 
 4
 The court initially notified the parties that it intended to impose a sentence of probation so that Hicks would not lose his job, and that it was inclined to impose a fine and order restitution in an amount which all told would total $65,000, the retail value of the boards. The court found that the manufacturer had been fully compensated when each board was originally sold. It reasoned that Hicks should make restitution to the satellite service providers in the amount which his customers owed but did not pay for the additional channels they were able to get as a result of his illegal modification of their boards. However, the court had before it information from the Satellite Broadcasting and Communications Association (SBCA) which estimated that the average annual cost of add-on programs such as HBO and Showtime was $384. Because the modified boards are usable for more than a year, use of this figure for 100 modified boards would result in an amount of restitution greater than $65,000. The court decided, for Hicks' benefit, to cap the total amount of fine and restitution at $65,000.
 
 
 5
 Hicks testified that his modification enabled satellite service customers to receive up to fifteen channels out of a possible thirty channels in addition to channels they had paid for. The court sought to establish how much lost revenue for the service providers the fifteen channels represented. Neither the government nor defense counsel had information to establish with certainty what that amount would be. Rather than continue sentencing, the court decided that it would use the amount that Hicks earned in making the modifications as an estimate of the amount lost by the copyright holders. Because Hicks charged between $200 and $250 to modify a board, the court decided he should make restitution in the amount of $20,000.
 
 
 6
 The court considered evidence of Hicks' financial condition and ability to pay a fine and make restitution, and determined that he had assets sufficient to allow him to pay $60,000. Hicks was single, had no dependents, and owned a house in which his equity was $135,000. The court imposed a sentence of three years probation with the conditions that Hicks serve six months community confinement and pay a fine of $40,000 and restitution of $20,000.
 
 
 7
 Although he did not make the argument in the district court, Hicks argues on appeal that the $40,000 fine is excessive and violates the Eighth Amendment because he will have difficulty in paying it. The Excessive Fines Clause of the Eighth Amendment limits the government's power to extract payment as punishment for a crime. Alexander v. United States, 113 S.Ct. 2766, 2775 (1993). The Supreme Court has provided no guidance as to what an excessive fine might be, although fines must be carefully scrutinized because they benefit the government. United States v. 38 Whalers' Cove Drive, 954 F.2d 29, 39 (2d Cir.), cert. denied, 60 U.S.L.W. 3755 (U.S 1992), citing Harmelin v. Michigan, 111 S.Ct. 2680, 2693 n. 9 (1991).
 
 
 8
 Under the sentencing guidelines, a fine should be imposed in all cases unless the defendant demonstrates his inability to pay a fine. U.S.S.G. Sec. 5E1.2(a). Before imposing a fine, the sentencing court must consider and make findings on the factors listed in 18 U.S.C.A. Sec. 3572 (West Supp.1994) concerning the defendant's ability to pay. See United States v. Arnoldt, 947 F.2d 1120, 1127 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3716 (U.S.1992). The district court made the requisite inquiry and findings in this case.
 
 
 9
 The fine range under the guidelines for offense level nine is $1000 to $10,000. U.S.S.G. Sec. 5E1.2(c)(3). However, when the statutory maximum fine is over $250,000, the sentencing court may impose a fine up to the maximum authorized by statute. U.S.S.G. Sec. 5E1.2(c)(4). The maximum fine authorized under 47 U.S.C.A. Sec. 605(e)(4) (Count One) is $500,000. Hicks' fine was within the range authorized by statute and the guidelines, and we find that it is not plainly excessive.
 
 
 10
 Hicks complains that the $20,000 restitution is also excessive, and is incorrect because it is based on his gain rather than on the victim's loss. He contends that the government failed to meet its burden of showing the amount of loss, if any, to the SBCA. Indisputably, revenue was lost by the satellite service providers because of Hick's illegal modification of the decryption devices. Hicks did not object in the district court to making payment to the SBCA as their representative, and we find no plain error in its designation as the payee.
 
 
 11
 As discussed above, the district court made a serious effort to estimate the amount of loss to the satellite service provider. It rejected the government's argument that the original retail value of the boards should be used, and settled instead on the conservative figure of $20,000, or about $192 for each of Hicks' 100 modified boards. Although that figure was based on Hicks' illegal profit, the court's real aim was to have him make restitution of the amount lost by the victim. We cannot say that the figure it arrived at was clearly erroneous.
 
 
 12
 Hicks also argues that he is unable to pay $20,000 in restitution. The district court made inquiry into his financial condition and made the findings prescribed by United States v. Bruchey, 810 F.2d 456, 458-59 (4th Cir.1987). It determined that Hicks' assets were greater than the amount he was ordered to pay for both restitution and fine. Consequently, Hicks' argument is without merit.
 
 
 13
 We therefore affirm the sentence imposed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 United States Sentencing Commission, Guidelines Manual (Nov.1991). Hicks was sentenced in June 1992